UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE JENSEN,<br>　　　　　Plaintiff,<br>　　vs.<br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br>　　　　　Defendant. | Case No. EDCV 05-00399-OP<br><br>MEMORANDUM OPINION; ORDER |

On May 11, 2005, plaintiff, Julie Jensen, lodged for filing a Complaint seeking review of the Commissioner's denial of her application for Supplemental Security Income ("SSI") benefits.

On January 6, 2006, in accordance with the Court's Case Management Order, the parties filed a Joint Stipulation. Thus, this matter is now ready for decision.

This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law.

## BACKGROUND

On December 4, 2000, Plaintiff protectively filed her application for SSI,[1] alleging inability to work since October 19, 2000, due to chronic fatigue immune deficiency syndrome ("CFIDS") and herniated disc at L4-5. (Administrative Record ("AR") at 112-14; 115, 124). She also alleged confusion, memory problems and

---

[1] Plaintiff filed a previous application in 1997 which was denied and is not at issue. (AR at 321).

irritability. (AR at 124). Her claim was denied at the initial and reconsideration levels (AR at 63-66, 69-72), and she requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 73-74). On March 12, 2003, a hearing was held. (AR at 461-93). On April 8, 2003, the ALJ issued his decision finding plaintiff "not disabled." (AR at 320-27). Following denial of review by the Appeals Council (AR at 3-4), plaintiff filed a Complaint with this Court (EDCV 03-906-SGL), and, on June 30, 2004, the matter was remanded for further proceedings by Order of this Court. (AR at 378, 379-89). The Appeals Council vacated the ALJ's decision and remanded the matter to the ALJ for further proceedings consistent with the Court's order. (AR at 376-77).

On December 8, 2004, in accordance with the remand order, a second hearing was held. (AR at 496-533). On March 10, 2005, the ALJ issued his decision again finding plaintiff "not disabled." (AR 309-16).

As reflected in the March 10, 2005, hearing decision, the ALJ found that plaintiff suffered from medically determinable impairments (i.e., " degenerative disc disease of the lumbar spine, hypertension, depression, and a psychophysiological reaction to pain") which in combination were "severe."  However, the ALJ further found that plaintiff's impairments did not meet or medically equal the criteria of any of the impairments listed in Appendix 1, Subpart P of the Commissioner's regulations ("Listing of Impairments" or "Listing"); that plaintiff's statements concerning her limitations were not entirely credible; and that plaintiff "retain[ed] the residual functional capacity to perform medium work consisting of lifting and carrying 50 pounds occasionally and 25 pounds frequently, standing and walking for 6 hours out of an 8-hour work day, and sitting for 8 hours out of an 8-hour work day, with opportunity to change position every hour. The claimant can occasionally balance and bend or stoop. Her mental impairment limits her to 4 to 5 step, moderately complex work in a habituated setting. She cannot perform work that requires safety operations, hypervigilance, or high production/quota work." (AR at 316 ). The ALJ further

found that, with this residual functional capacity ("RFC"), plaintiff was able to perform her past relevant work as an office clerk. Consequently, the ALJ concluded that plaintiff had not been under a "disability" as defined in the Social Security Act at any time through the date of the ALJ's decision and was, therefore, not eligible for SSI. (Id.).

Plaintiff did not file exceptions to the decision, nor did the Appeals Council assume jurisdiction on it's own motion. Thus, the decision of March 10, 2005, stands as the final decision of the Commissioner. 20 C.F.R. § 416.1484(d).

The timely filing of the current action followed.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues which plaintiff is raising as the grounds for reversal and/or remand are as follows:

1. Whether the ALJ properly considered the treating physician's opinion of disability;

2. Whether the ALJ properly considered the lay witness testimony; and

3. Whether the ALJ properly developed the record.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986).

Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984).

## DISCUSSION

For the reasons discussed below, the Court finds that the decision of the ALJ is based upon substantial evidence and that there are no errors of law warranting reversal or remand. Accordingly, the decision of the Commissioner is affirmed.

**A.  THE ALJ'S EVALUATION OF THE OPINION OF THE TREATING PHYSICIAN**

The opinion of a treating physician is generally entitled to greater weight than the opinion of a physician who has examined but not treated the claimant. This is so because the treating physician is employed to cure and has a greater opportunity to know and observe his patient than a physician who only saw the claimant on one occasion. The opinion of an examining physician, in turn, is generally entitled to greater weight than the opinion of a physician who has not examined the claimant. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). This is not to say, however, that the opinion of even a treating physician is "necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989), citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n. 7 (9th Cir. 1989). If, for example, the opinion of a treating physician is rejected in favor of that of a non-treating physician and the opinion of the non-treating physician is based upon independent clinical findings, the opinion of the non-treating physician can constitute substantial evidence. It is then for the ALJ to resolve the conflict. Andrews, 53 F. 3d at 1041. If, on the other hand, the opinion of the non-treating physician is based upon the same clinical findings considered by the treating physician, the ALJ must cite specific and legitimate reasons for rejecting the treating physician's opinion. Id.

Plaintiff received treatment from Dr. Shatha Bakir from April 10, 2002, until

August 21, 2002. At the time of plaintiff's first visit with Dr. Bakir, her main complaints related to her ears and to a facial lesion for which she subsequently underwent surgical removal. (AR at 264; see AR at 249-50). Although there was also a diagnosis of low back pain, findings in the back and extremities were negative. (AR at 264-65). During subsequent visits, plaintiff complained of fatigue and excessive sleep, and Dr. Bakir noted a diagnosis, among others, of chronic fatigue syndrome. (AR at 255, 257, 258, 259). In the meantime, on July 16, 2002, plaintiff reported that she had recently been involved in a motor vehicle accident resulting in injury to her left shoulder and spine, but there were no significant findings. (AR at 258). On this same date, Dr. Bakir completed a form for CalWorks indicating that plaintiff was temporarily disabled and that she was expected to be released from care on January 16, 2003. (AR at 254). As support for his assessment, Dr. Bakir indicated that plaintiff "cannot perform her duties, cannot concentrate." (Id.).

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Bakir's opinion of disability. The Court disagrees.

In the first decision, which was incorporated by reference in the second decision (AR at 310), the ALJ noted that this opinion merely reflected temporary incapacity (AR at 324; see AR at 254) which was expected to be resolved by January 16, 2003, less than twelve months from the commencement of Dr. Bakir's treatment of plaintiff. 20 C.F.R. § 416.909 (The disabling impairment must have lasted or be expected to last for a continuous period of twelve months.). Although Dr. Bakir surmised that the onset of incapacity was January of 2000 (AR at 254), a contemporaneous medical opinion indicates otherwise. When plaintiff sought a "note that she is unable to work" in October of 2000, as noted by the ALJ in his first decision, plaintiff's then-treating physician would only write an excuse for one month off work (AR at 322; see AR at 191). Plaintiff does not state why Dr. Bakir's assessment is entitled to greater weight.

Additionally, in his second decision, the ALJ noted that the opinion of disability

5

consisted of "checked boxes and a one-sentence narrative" which was not supported by objective evidence even from Dr. Bakir's own treatment notes. (AR at 313). These are sufficiently specific and legitimate reasons for disregarding Dr. Bakir's assessment. Crane v. Shalala, 76 F. 3d 251, 253 (9th Cir. 1996)(The ALJ permissibly rejected "check-off reports that did not contain any explanation of the bases of their conclusions."); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

Plaintiff disputes the ALJ's finding, arguing that "Dr. Bakir has established objective evidence as to the Plaintiff's impairments." (JS at 3). However, plaintiff does little more than cite Dr. Bakir's diagnoses and plaintiff's own subjective complaints as well as a few scattered findings. (Id.). On the other hand, the ALJ noted that, notwithstanding plaintiff's complaints and diagnosis of chronic fatigue, Dr. Bakir also wrote that plaintiff worked out, swam, and lifted weights. (AR at 313; see also AR at 259.) The ALJ further noted that, when plaintiff suffered injuries resulting from the motor vehicle accident, Dr. Bakir reported no evidence of tenderness, and range of motion of the left shoulder was full. (AR at 313; see AR at 258). Subsequent reports of findings attributable to the accident, moreover, revealed only paracervical, lumbar, and paravertebral tenderness. (AR at 313; see AR at 257). Based on the foregoing, the Court finds that the specific and legitimate reasons cited by the ALJ for his conclusion that the opinion of Dr. Bakir is "not entitled to significant probative weight" are supported by substantial evidence.

**B.   THE ALJ'S FAILURE TO ADDRESS THE LAY WITNESS STATEMENT OF J. DAVID CUTTRELL**

On January 10, 2001, J. David Cuttrell, plaintiff's landlord and friend (AR at 498), provided an unsworn statement entitled Daily Activities Questionnaire (AR at 137-42). Plaintiff summarizes Mr. Cuttrell's responses to the questionnaire as follows:

In this questionnaire, Mr. Cuttrell states, "some days she can't do much of anything because of her illness." [AR. 137.] As for caring for her personal needs, Mr. Cuttrell states, "Quite often she is too tired and weak to do anything, but she takes good care of her hygiene by herself. She has fallen many times in the shower." [AR. 138.] As for doing household chores, the [sic] Mr. Cuttrell explains, "More and more every day her illness forces her to do less and less chores." [AR. 139.] Mr. Cuttrell states that the Plaintiff does not need assistance going out, "unless she was bruised from a fall or bump caused by fatigue or dizzy-ness [*sic*]." [AR. 139.] As for creational [sic] activities, the Plaintiff "used to be very athletic (hiking, swimming, etc.). She likes to sew and read. Now it's often a good day if she can walk to our mailbox and back. Her hands get numb if she sews too long." [AR. 139.] As for reading, Mr. Cuttrell states, "The daily paper and a book or two a month with occasional magazines. Mostly she remembers clearly, though time [sic] are she can't remember her name almost." [AR. 140.] When describing how the Plaintiff gets along with family, friends, co-workers or others, he states, "When the pain or the fatigue or dizzyness [*sic*] get so-o-o bad (she is affected every hour or every day) she loses patience with others. She is usually gracious and polite, but the pain and disorientation cause her to get angry, short and frustrated easier." [AR. 140.] Mr. Cuttrell describes if the Plaintiff has problems concentrating or remembering. He states, "Yes, and it gets worse every day. She has missed appointments and has forgotten the day or a meeting or to take her medicine." [AR. 141.] As for following instructions, the Plaintiff "... gets fatigued easily and frustrated with interruptions or other demand on her time. So sometimes it takes a good deal of time for her to accomplish her goals because of her pain and illness." [AR 141.] As for the Plaintiff's exhibiting unusual

behavior or fears, Mr. Cuttrell explains, "Unusual – no. Being extremely well-fit and in shape and vital in the past, she now slowly deteriorates. She is careful to eat fresh foods, to keep good hygiene and the usual attention to details. Sometimes she gets very weary and tired and gets very upset from the pains and fatigue and malaise. She can get very high blood pressure and will yell and cry in frustration. She hangs on to hope only because she is the mother of her children. That is what keeps her alive – serving and nurturing her kids." [AR. 141.]

(JS at 7).

Title 20 C.F.R. § 416.913(d) provides that, in addition to medical evidence, the Commissioner "may also use evidence from other sources to show the severity of [an individual's] impairment(s) and how it affects [her] ability to work," and the Ninth Circuit has repeatedly held that "[d]escriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). This apparently applies equally to the sworn hearing testimony of witnesses (see Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)) as well as to unsworn statements and letters of friends and relatives (see Schneider v. Commissioner of the Social Security Administration, 223 F.3d 968, 974 (9th Cir. 2000)). If the ALJ chooses to reject such evidence from "other sources," he may not do so without comment, Nguyen, 100 F.3d at 1467, but must provide "reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). The mere fact that a plaintiff's testimony is properly discredited does not mean that the ALJ is relieved of his obligation to comment upon the lay witness testimony. To find otherwise would be based upon "the mistaken impression that lay witnesses can never make independent observations of the claimant's pain and other symptoms." Id.

Here, the ALJ made no reference whatsoever to Mr. Cuttrell's statement in his decision. Plaintiff contends, therefore, that the ALJ erred, and remand is required.

The Commissioner, on the other hand, argues that the ALJ's failure to address Mr. Cuttrell's statement "was harmless error given the substance of the testimony and the ALJ's finding regarding Plaintiff's credibility." (JS at 8). <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1436, n. 9 (9th Cir. 1995); <u>Booz v. Secretary of Health and Human Services</u>, 734 F.2d 1378, 1380-81 (9th Cir. 1984) (Harmless error rule is applicable in Social Security cases.).

In the recent case of <u>Stout v. Commissioner, Social Security Administration</u>, 454 F.3d 1050, 1056 (9th Cir. 2006), the Ninth Circuit found that such an error is harmless only if "a reviewing court . . . can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."

If plaintiff's summary of Mr. Cuttrell's statement were all that was considered, then perhaps, <u>if credited</u>, no reasonable ALJ would find plaintiff "not disabled." However, a closer reading of Mr. Cuttrell's statement reveals that much of it is non-specific and suggestive opinion evidence. When translated into plaintiff's functional activity level, an inference of disability becomes untenable.

For example, while Mr. Cuttrell states that "some days she can't do much of anything" and that "quite often she is too tired and weak to do anything," there is no indication exactly how "often" this occurs. Similarly, although Mr. Cuttrell claims that plaintiff's "illness forces her to do less and less chores," that "sometimes it takes a good deal of time for her to accomplish her goals because of her pain and illness," and that "[n]ow it's often a good day if she can walk to our mailbox and back," he also indicates in his questionnaire that plaintiff still maintains her grooming and hygiene, that she "takes care of her children ..., does laundry and cooking, shopping, school shuttling, etc." (AR at 137-138). Mr. Cuttrell further states that plaintiff goes out twice a day to take and pick up her children from school, and she goes to the feed store. (AR at 139).

With regard to household chores, Mr. Cuttrell states that plaintiff does the

cleaning, ironing, vacuuming, dusting, sweeping, and washing of the cars. (AR at 139). She also feeds her chickens, rabbits and dogs and cleans the house and yard. She waters the trees, plants and garden "when she feels good enough," and her children help her with the chores. (AR at 139, 139). Although Mr. Cuttrell indicates that sometimes plaintiff "can't remember her name almost" and that her concentration and memory are getting "worse every day," in addition to being "the mom," plaintiff reads "the daily paper and a book or two a month with occasional magazines," and "mostly she remembers clearly" what she reads. (AR at 138, 140).

Similarly, although Mr. Cuttrell states that "the pain and disorientation cause her to get angry, short and frustrated easier" and that "she does less fun things, having energy only for the survival-type things like feeding the kids, etc," he also states that plaintiff likes to listen to country music radio, watch television, and she tries to attend "every city council meeting (held) twice a month. She tries to go to tall club functions once or twice a month. She is often published in [their] daily paper in the op-ed sections." (AR at 140, 141). Finally, Mr. Cuttrell states that plaintiff goes to the movies two or three times a month. (AR at 141).

As if the above was not a sufficient indication of plaintiff's activities, as noted by the ALJ, Dr. Bakir's records indicate that plaintiff was still able to work out, swim, and lift weights despite her complaints of disabling fatigue and pain. (AR at 313; see AR at 259, 262). Plaintiff also testified that she takes her children to school events and that she stays for soccer practice "usually." Additionally, when she is "feeling well enough," she takes her children to the nearby mountains and they "can go up and down maybe the stream bed." (AR at 478-79; see also AR at 262). Although she tended to minimize the extent of her activities, plaintiff also attended school full time, obtaining an AA degree in between hearings (AR at 509), wrote a newsletter for the park for a brief period of time (AR at 472), and was, at the time of the last hearing, attempting to start a nursery, although she testified that she only spent two hours a week on this endeavor. (AR at 514-16).

Based on the foregoing, even considering only the activities cited by Mr. Cuttrell, it is clear that plaintiff is able to maintain a sufficiently regular schedule to permit a wide range of household and recreational activities despite the pain and fatigue alleged. Consequently, this Court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056. Thus, the Court finds that the ALJ's failure to address Mr. Cuttrell's statement was harmless error.

**C.     THE ALJ'S DUTY TO FULLY AND FAIRLY DEVELOP THE RECORD**

In Social Security cases, the ALJ has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered, even where the claimant is represented. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). However, when the claimant is unrepresented, the ALJ "must be especially diligent in exploring for all the relevant facts." Id. This duty is heightened where the claimant has a mental impairment and is unable to protect her own interests. Id. The duty to "conduct an appropriate inquiry" is triggered by "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence." Id., citing Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996).

Plaintiff submitted a questionnaire entitled Medical Opinion Re: Ability to Do Work-Related Activities (Physical), dated January 3, 2003, completed by Dr. Robert E. Erwin, which indicates essentially that plaintiff is unable to perform even sedentary work. (AR at 303-05).

In his first decision, the ALJ rejected this opinion as being a check-the-box form "unworthy of significant probative weight" because it was "not accompanied by any objective evidence in support of the conclusion and is inconsistent with the evidence of record." (AR at 324).

In the second decision, the ALJ reiterated his reasons for rejecting this opinion as being a "conclusionary, check-marked form which is not entitled to great value, as

noted above regarding Dr. Bakir's check-listed form." The ALJ noted, for example, that there were no treatment records and that the only findings cited by Dr. Erwin for his highly restrictive assessment were tenderness to palpation at the joints and pain with no diagnosis or objective findings to support his opinion. (AR at 314). The lack of supportive findings is a sufficiently specific and legitimate reason for rejecting Dr. Erwin's opinion, Crane, 76 F. 3d at 253; Thomas, 278 F.3d at 957, just as it is for rejecting Dr. Bakir's opinion (supra).

However, because the ALJ also noted in his second decision that "there is nothing in the record which shows Dr. Erwin treated the claimant on any occasion" (AR at 314), plaintiff now contends that the ALJ failed to properly develop the record "because he did not ask the Plaintiff if she had been examined by Dr. Erwin and if there were any treatment notes for her to retrieve." (JS at 9). Plaintiff's argument lacks merit.

As the Commissioner points out, "this Court has already determined that '[t]he fact that Dr. Erwin's opinion was tendered without any supporting clinical or laboratory findings and was tendered on a check-box form provides good cause for rejecting it.' Jensen v. Barnhart, No. 03-906 SGL, slip op. at 6 (C.D. Cal. 2004)." (JS at 9). (AR at 384).

Also, as pointed out by the Commissioner, plaintiff, who bears the burden at steps one through four of the sequential evaluation procedure, Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005), has "not come forward with any more medical evidence." (JS at 9). Nor does plaintiff even claim that Dr. Erwin is, in fact, a treating physician. Rather, plaintiff claims that the matter requires remand so that the ALJ can ask plaintiff "if she had been examined by Dr. Erwin" in order to ascertain whether there are records which, if existing, could have been requested by plaintiff well before

the second hearing (and, indeed, before the first decision).[2] Based on the foregoing, the Court finds that the record is not ambiguous or inadequate, and the ALJ did not commit reversible error in failing to inquire concerning Dr. Erwin's status or the existence of any records.

## CONCLUSION

After careful consideration of the Complaint, Joint Stipulation of the parties, and the transcript of the record, and, in accordance with the foregoing discussion, this Court finds that the decision of the Commissioner is supported by substantial evidence and that the Commissioner applied the proper legal standards.

## ORDER

IT IS HEREBY ORDERED THAT Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated: September 28, 2006        /S/  OSWALD PARADA
                                 HONORABLE OSWALD PARADA
                                 United States Magistrate Judge

---

[2] Although not raised as an issue by the Commissioner, this Court further notes that all of plaintiff's arguments could have been raised in connection with her first Complaint (EDCV 03-906 SGL). See Kessler v. Nat'l Enters., Inc., 203 F.3d 1058, 1059 (8th Cir. 2000) ("The general rule is that, 'where an argument could have been raised on an initial appeal, it is inappropriate to consider that argument on a second appeal following remand.'"). Dr. Bakir's CalWorks questionnaire was addressed by the ALJ in the first decision (AR at 324), Mr. Cuttrell's statement was submitted shortly after plaintiff filed her application (AR at 142), and Dr. Erwin's opinion was likewise addressed by the ALJ (AR at 324), yet only Dr. Erwin's opinion was raised as an issue until now.